UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SUSAN GOMEZ SOTO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant.[1] ) | CIVIL ACTION NO.<br>5:12-CV-00084-BG<br>ECF |

## REPORT AND RECOMMENDATION

### Statement of the Case

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Susan Gomez Soto seeks judicial review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the United States Magistrate Judge for further proceedings. Pursuant to the Order transferring the case, the undersigned now files this Report and Recommendation.

On December 7, 2010, Soto and a vocational expert testified at a hearing before an administrative law judge (ALJ). Soto was represented by counsel at the hearing. The ALJ determined on January 25, 2011, that Soto was not disabled because she could perform her past relevant work as a fast food worker. The Appeals Council denied review on April 9, 2012. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration, succeeding former Commissioner Michael J. Astrue. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is automatically substituted as Defendant in this case.

1

for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Standard of Review

A plaintiff is disabled and may be entitled to disability insurance benefits and supplemental security income if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 416.920(a)(4), 416.945(a)(1).

The court must affirm the Commissioner's decision unless it finds that (1) the ALJ applied an incorrect legal standard or (2) the ALJ's determination is not supported by substantial evidence. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

**Factual Background**

Soto claims that she became disabled on September 11, 2008, at age 50 due to a right shoulder injury, back injury, stomach problems, and migraine headaches. (Tr. 115, 119.) She injured her shoulder on September 8, 2008, when she fell while mopping at her job in a school cafeteria. (Tr. 172, 231.) She underwent right shoulder surgery on February 12, 2009, after conservative treatment failed. (Tr. 218, 221.)

Soto has a sixth grade education, is 5 feet, 2 inches tall, and weighs 190 pounds. (Tr. 29, 118, 124.) In addition to her work at the school cafeteria, she previously worked as a cook at a drive-in restaurant. (Tr. 120, 126.) She is left-handed. (Tr. 139.)

**The ALJ's Findings**

At the second step of the sequential analysis, the ALJ found that Soto had the following severe impairments: major depressive disorder, chronic low back pain, a history of a shoulder injury with rotator cuff repair, obesity, hypertension, and migraine headaches. (Tr. 13.) At step three, he

3

concluded that Soto did "not have an impairment or combination of impairments" that met or medically equaled an impairment listed in the regulations governing Social Security claims (listing). (Tr. 14.) He explicitly found that Soto's mental impairment did not meet or equal Listing 12.04, which describes affective disorders "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04; (Tr. 16–17).

The ALJ then determined that Soto had the RFC to perform light work except that she was limited to occasional overhead reaching and to understanding, remembering, and carrying out detailed but not complex instructions. (Tr. 17.) At the hearing before the ALJ, the vocational expert testified that the job of fast food worker was unskilled, light work that did not require more than occasional overhead work and that could be performed by someone limited to detailed but not complex tasks. (Tr. 40–41.)[2] Relying in part on this testimony, the ALJ concluded at step 4 that Soto could perform her past relevant work as a fast food worker "as generally performed." (Tr. 21–22.) An ALJ's determination that a claimant can perform past work may be based on descriptions of "past work as actually performed or as generally performed in the national economy." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

## Discussion

---

[2] The vocational expert initially testified that someone limited to detailed but not complex tasks could not perform the job of fast food worker. (Tr. 40.) However when asked for clarification, he reversed his answer and explained that the job of fast food worker requires the ability to perform simple tasks and could be performed by someone limited to detailed but not complex tasks. (Tr. 40–41.)

4

I.  Substantial evidence supports the ALJ's findings regarding the effects of Soto's depression.

The ALJ concluded that Soto's depression did not meet or medically equal Listing 12.04 in part because she experienced only mild difficulties in activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (Tr. 16.) Soto argues that substantial evidence does not support this finding. She also argues that her depression makes her unable to perform the job of fast food worker as that job is described in the Dictionary of Occupational Titles (DOT). The DOT defines the job of fast food worker as follows:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

Dictionary of Occupational Titles at 241 (4th ed. 1991) (Listing 311.472-010). As previously noted, Soto has the burden of showing that she is disabled at steps three and four. *Audler*, 501 F.3d at 448.

Substantial evidence supports the ALJ's conclusions that Soto's depression caused her only mild limitations and did not prevent her from performing the duties of a fast food worker. Medical providers found Soto to be well groomed and cooperative with an appropriate mood and affect at appointments from September 2008 through June 2009. (Tr. 160, 168, 170, 188.) On June 25, 2009, Soto's treating physician found her to be cooperative and prescribed medication for her complaints of depression. (Tr. 195–96.)

In documents submitted in connection with her application for benefits in October 2009, Soto

reported that she regularly did housework and laundry, washed dishes, ran errands, paid her bills, went grocery shopping, made meals, read, talked to her sister on the telephone, and attended church. (Tr. 134, 136–38.) She also stated that she took care of her husband and that she could count change and use a checkbook or money orders. (Tr. 135, 137.) In addition, she reported that she had no problems getting along with family, friends, neighbors, or authority figures. (Tr. 139–40.) In documents submitted in March 2010, Soto reported that she had experienced no change in her conditions and no new mental limitations since June 2009. (Tr. 144–45, 149.) In May 2010, Soto again reported that she had experienced no change in her conditions and no new mental limitations. (Tr. 152, 155.)

In June 2010, Amita Alexander, M.D., renewed the prescription for Soto's antidepressant medication in response to Soto's complaints that her depression had increased after she separated from her husband three months prior. (Tr. 282–83.) At that appointment, Soto reported that she had not been taking her antidepressant medication for the past year due to lack of insurance. (Tr. 282.) At follow-up appointments in July and September of 2010, Dr. Alexander observed that Soto had an appropriate mood and affect and did not complain of depression or anxiety. (Tr. 272–73, 277–78.) She concluded that Soto's depression had shown good response to treatment and was controlled with medication. (Tr. 272, 274.)

At the hearing before the ALJ, Soto testified that she had been depressed "for a long time" including while she worked at her previous jobs. (Tr. 32.) Soto's work during part of the period that she received treatment for depression is significant evidence that her depression did not limit her basic ability to function in a work setting. *See Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (affirming ALJ's conclusion that claimant had no limitations due to a mental impairment and finding

6

it significant that claimant continued to work for at least some of the period that he received treatment for his mental impairment).

Finally as previously mentioned, the vocational expert indicated that someone with Soto's RFC, which included mental limitations, could perform the job of fast food worker. (Tr. 17, 40–41.) The ALJ properly relied on the vocational expert's testimony concerning the mental demands of Soto's past work as it is generally performed. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) (holding that vocational expert's testimony provided a basis for ALJ's finding that claimant could perform past job of cashier as it existed in the national economy); 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

In view of the foregoing substantial evidence, the ALJ's conclusions regarding Soto's depression should be affirmed. *Greenspan v. Shalala*, 38 F.3d 232, 240 (5th Cir. 1994) ("As long as there is substantial evidence in the record as a whole supporting the ALJ's determination . . . we must uphold that decision.").

II.     The ALJ considered the combined effect of all of Soto's impairments, including obesity.

Soto argues that the ALJ "failed to consider the effect [of] obesity and its related impairments" on her ability to work. (Pl.'s Br. 17.) She acknowledges that the ALJ concluded that her obesity was a severe impairment that could "be expected to put additional strain on her back and lower extremities[,]" but she claims that the ALJ did not assess the limitations caused by this strain. *Id.* Finally, she asserts that the ALJ did not assess whether her obesity-related impairments "in combination with a severe impairment of obesity would affect her ability to perform the specific job of a fast food worker[.]" *Id.*

7

It is true that an ALJ "must analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments[,]" including obesity. *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (quoting *Dellolio v. Heckler*, 705 F.2d 123, 128 (5th Cir. 1983)) (internal quotation marks omitted); SSR 02-1p, 2002 WL 628049, at *3–7 (Sept. 12, 2002) (explaining that a claimant's obesity must be considered at each step of the sequential analysis). However, Soto's arguments do not require remand.

The ALJ thoroughly discussed Soto's obesity in his opinion: he found that obesity was one of her severe impairments and noted that she was "at greater risk to develop obesity related illnesses and complications." (Tr. 13–14.) He also discussed Social Security Ruling 02-1p, which describes the proper evaluation of obesity in the sequential analysis, and he concluded that Soto's extra weight could "be expected to put additional strain on her back and both lower extremities." (Tr. 15–16.)

The ALJ also indicated that he considered the combined effect of Soto's impairments: he recognized that he had to consider Soto's combination of impairments in his review of applicable law, and he expressly found that Soto did not have "an impairment or combination of impairments" that met or medically equaled a listing at step three. (Tr. 11–12, 14.) He also recognized that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." (Tr. 16.) In addition, he stated that he considered "all the evidence," "all symptoms," and "the entire record." (Tr. 11, 17.)

Moreover, the ALJ accounted for the effects of Soto's obesity and related conditions in his RFC assessment by limiting her to a restricted range of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good

8

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Light work also "presupposes an ability to stand and walk at least 6 hours in an 8-hour work day." *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985) (quoting Dictionary of Occupational Titles).

Soto has not specified additional limitations that should have been included in her RFC, and substantial evidence supports the ALJ's conclusion that her obesity did not impose additional limitations. At an appointment in September 2008, a medical provider found that Soto's extremities were normal except for her injured right shoulder and a bruise on her knee from her fall at work. (Tr. 170–71.) In October 2008, November 2008, and January 2009, Soto's treating orthopedist Mimi Zumwalt, M.D., observed normal alignment, functional range of motion without pain, and 5/5 strength in all of Soto's extremities except for her injured right arm. (Tr. 221–22, 227–28, 231–32.) According to Dr. Zumwalt, Soto reported that she could "perform most of her daily activities as far as hygiene and taking care of herself." (Tr. 231.)

In January 2009, the physician who examined Soto for surgery clearance found that Soto's history and examination were unremarkable except for her history of gastritis and her right rotator cuff tear. (Tr. 158.) In June 2009, Soto reported normal range of motion and no swelling, erythema, or tenderness at a medical appointment to address complaints of back pain. (Tr. 195.)

As previously noted, in documents that Soto submitted in October 2009, she reported that she regularly did housework and laundry, washed dishes, ran errands, went grocery shopping, and made meals; she also reported that she drove and took short walks. (Tr. 134, 136–38.) That same month, Dr. Zumwalt examined Soto and determined that her right shoulder had reached maximum medical improvement. (Tr. 288.) Dr. Zumwalt concluded that Soto could function at light capacity

with "occasional lifting of 25 pounds and no lifting above the waist heavier than 13 pounds." *Id.*

In November 2009, consulting physician Piyush Mittal, M.D., examined Soto and observed that she exhibited a normal gait without assistive devices, normal left shoulder, and normal hands, wrists, hips, and knees. (Tr. 258.) Dr. Mittal also found that Soto's right shoulder and neck exhibited fair range of motion. *Id.* In December 2009 and March 2010, state agency medical consultants reviewed Soto's evidence of record and concluded that she could occasionally lift up to twenty pounds; frequently lift up to ten pounds; sit, stand, and walk for about six hours in an eight-hour workday; and push and pull without limitation. (Tr. 263, 270.)

After examining Soto for complaints of back pain in June 2010, Dr. Alexander observed that Soto had normal range of motion and no tenderness, numbness, or tingling in her back. (Tr. 283.) At follow-up appointments in July and September of that year, Soto exhibited normal range of motion, strength, and gait. (Tr. 273, 278.)

Soto cites *Walford v. Astrue*, No. 3-09-CV-0629-BD, 2011 WL 2313012 (N.D. Tex. June 10, 2011), in support of her argument. The court in that case found that remand was required because "the ALJ failed to cite SSR 02-1p and, more importantly, failed to apply the regulation properly." *Id.* at *4. However, that case is distinguishable from Soto's because the ALJ's finding in *Walford* contradicted a treating physician's RFC assessment and focused on the claimant's "lifestyle deconditioning and her failure to lose weight" instead of medical evidence. *Id.* at *3–4 (internal quotations omitted). In contrast, the functional capacity assessment of Soto's treating physician supports the ALJ's RFC assessment as previously explained. (Tr. 17, 288.) Furthermore, the ALJ cited Social Security Ruling 02-1p and thoroughly discussed Soto's medical evidence of record. (Tr. 15, 18–21.)

10

For the foregoing reasons, Soto's argument that the ALJ did not consider the effects of her obesity alone or in combination with her other impairments does not require remand. *See Zimmerman v. Astrue*, No. 07-20766, 2008 WL 3471852, at **2–3 (5th Cir. Aug. 13, 2008) (rejecting claimant's argument that the ALJ did not properly consider obesity and obesity-related impairments because ALJ found obesity to be a severe impairment, emphasized the importance of considering obesity, and accounted for effects of obesity in his RFC assessment); *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (rejecting claimant's conclusory argument that ALJ failed to consider the combined effects of his impairments because the ALJ expressly referenced the claimant's combination of impairments at step three, stated that he considered "the evidence as a whole," and used other similar language in his opinion).

III.    The ALJ's step four reference to Soto's past work as a cook's helper does not require remand.

The ALJ summarized his step four finding as follows: "The claimant is capable of performing past relevant work as a fast food worker; cook's helper in public school. This work does not require the performance of work related activities precluded by the claimant's [RFC.]" (Tr. 21.) Soto argues that substantial evidence does not support the conclusion that she could do the job of cook's helper because that job is classified as medium work and the ALJ limited Soto to light work. It is true that the DOT classifies a cook's helper as medium work, which involves heavier lifting requirements that light work. Dictionary of Occupational Titles at 245 (4th ed. 1991) (Listing 317.687-010); 20 C.F.R. §§ 404.1567(c), 416.967(c) (describing requirements of medium work).

Nevertheless, Soto's argument does not require remand. The ALJ's inclusion of cook's helper in his summary of his step four summary was likely a typographical error. He did not discuss Soto's past work as a cook's helper in his step four explanation; rather, he discussed only his reasons

11

for finding that Soto could perform her past work as a fast food worker. (Tr. 21–22.) The previously discussed substantial evidence that supports the ALJ's findings regarding Soto's depression and obesity also supports his step four conclusion that she could perform the job of fast food worker. The ALJ's reference to Soto's past work as a cook's helper does not render this conclusion unsupported by substantial evidence. Accordingly, remand is not required. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (upholding ALJ's non-disability finding because alleged error did not "render the ALJ's determination unsupported by substantial evidence").

## Conclusion

For the foregoing reasons, the undersigned recommends that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Soto's Complaint with prejudice.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other*

*grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Dated:     April 2, 2013.

_____
NANCY M. KOENIG
United States Magistrate Judge